IN THE UNITED STATES COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEFFREY SINGLES, on behalf of himself and all others similarly situated,<br><br>    *Plaintiff,*<br><br>v.<br><br>Robinson Aviation, LLC,<br><br>    *Defendant* | Case No. _____ |

# COLLECTIVE ACTION COMPLAINT

Plaintiff Jeffrey Singles is employed by Defendant and brings this action as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA"), against the Defendant, Robinson Aviation, LLC ("RVA") on behalf of himself and all others similarly situated because of Defendant's failure to properly calculate the regular rate of pay when paying overtime to Plaintiff and to those similarly situated. Plaintiff, and all those similarly situated, seek a declaratory judgment under 28 U.S.C. § 2201 and compensation, damages, equitable and other relief available under the FLSA, as amended, 29 U.S.C. § 201 *et seq.*

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

## PARTIES

3. At all times material, Plaintiff Jeffrey Singles has been employed by RVA as an Air Traffic Controller. Plaintiff has given his written consent to be a Party-Plaintiff in this action pursuant to 29 U.S.C. § 216(b). His consent is appended to this Complaint as Exhibit A. Plaintiff brings this action as a collective action on behalf of himself and all others similarly situated who opt into this case through subsequent Notices of Filing in accordance with 29 U.S.C. § 216(b).

4. Plaintiff, while employed by Defendant, has been an "employee" within the meaning of the FLSA, 29 U.S.C. 29 U.S.C. § 203(e)(1).

5. Defendant Robinson Aviation, LLC ("RVA") is a Delaware corporation headquartered at 1601 Northwest Expressway, Suite 850, Oklahoma City, Oklahoma 73118. It can be served through its registered agent, Keren Williams McClendon, at 1601 Northwest Expressway, Suite 850, Oklahoma City, Oklahoma, 73118.

6. Defendant is an "employer" within the meaning of 29 U.S.C. § 203(d). Defendant is a "person" within the meaning of 29 U.S.C. § 203(a).

7. At all times material herein, Defendant has been an enterprise engaged in commerce as defined by 29 U.S.C. § 203(r)(1), with an annual dollar business volume exceeding $500,000.

## FACTS

8. Plaintiff is, and has been at all times material, employed by Defendant as an Air Traffic Controller.

9. Plaintiff, and all similarly situated Air Traffic Controllers share the primary

duties of monitoring and directing the movement of aircraft on the ground and in the air; controlling ground traffic in airport runways and taxiways; issuing landing and takeoff instructions to pilots; transferring control of departing flights and accepting control of arriving flights; informing pilots of critical information including weather and runway closures; and alerting airport response staff in the event of an aircraft emergency.

10. The Federal Aviation Administration ("FAA") awards contracts to private companies under the FAA's Federal Contract Tower Program, to provide air traffic control services at small and regional airports and airfields.

11. Defendant RVA currently operates 102 towers, and employs over 600 air traffic controllers, through the FAA Contract Tower Program.

12. Until approximately May of 2025, Air Traffic Controllers employed by RVA used paper timesheets to track the time they worked, on which they notated the shifts they worked, as well as denoted which hours were overtime hours and/or were eligible for night shift or other differentials. Air Traffic Controllers would turn in their timesheet to their supervisors at the end of each week.[1]

13. At all material times herein, Plaintiff Singles has worked for RVA as an Air Traffic Controller in the Federal Contract Tower at Laredo International Airport (LRD).

14. While working as Air Traffic Controllers, Plaintiff Singles, and all others similarly situated, are scheduled to work 40 hours a week as their regular schedule.

### *The Rate at Which Overtime is Paid to Plaintiff and All Others Similarly Situated*

---

[1] In approximately May of 2025, Defendant RVA began using an electronic pay and timekeeping system, ADP.

15. While working as Air Traffic Controllers, Plaintiff and all others similarly situated, receive certain payments for their work, in addition to their hourly rates of pay including but not limited to night shift differential, Sunday premium pay, on-the-job training pay, and step-up pay. These payments are made pursuant to a Collective Bargaining Agreement, and thus they are paid to Plaintiff and all others similarly situated. However, Defendant fails to include these payments in the regular rate of pay at which overtime is paid for purposes of calculating overtime payments owed to Plaintiff.

16. Defendant fails to include these payments in the calculation of the regular rate of pay of Plaintiff and all others similarly situated pursuant to a systematic, company-wide practice.

17. Air Traffic Controllers are eligible to earn a night shift differential of 1.1 times their hourly rate of pay, pursuant to the CBA, when they work between the hours of 6:00 pm and 6:00 am.

18. Similarly, Air Traffic Controllers earn a Sunday premium pay equal to 25% their hourly rate of pay, pursuant to the CBA, for hours worked on Sunday.

19. Air Traffic Controllers are also eligible to earn on-the-job training pay of 1.1 times their hourly rate of pay, pursuant to the CBA, for all time spent conducting such training.

20. When there is no Assistant Air Traffic Manager and the Air Traffic Manager is absent for five days or more, an Air Traffic Controller is eligible for an additional $1.00 an hour in step-up pay if they are required to serve as Acting Air Traffic Manager.

21. For example, during the pay period between November 20, 2022, and

4

December 3, 2022, Plaintiff Singles worked his regularly scheduled 80 hours and was paid at a rate of $39.37 per hour. During this time, Plaintiff Singles also worked 27.5 hours between the hours of 6:00 pm and 6:00 am and received the requisite night shift differential, and he worked 16 hours on Sunday and received Sunday premium pay. Plaintiff Singles also worked 8 hours of overtime during this pay period. However, Defendant only paid him overtime compensation at 1.5 times his hourly rate of pay, at $59.055 ($39.37 x 1.5) and failed to include his night shift differential and Sunday premium pay in the calculation of the regular rate of pay on which his overtime is based. Had Defendant properly calculated Plaintiff Singles' overtime rate to include the night shift differential and Sunday premium pay, his overtime rate would have been an additional $12.08 per hour.

22. Plaintiff Singles does not have access to his pay stubs for the period between January of 2023 and May of 2025. However, Plaintiff Singles was scheduled for, and worked, 40 hours per week, and regularly worked scheduled overtime, as well as hours that were entitled to night shift differential and Sunday premium pay. Between January of 2023 and May of 2025, Plaintiff Singles was paid in the same way as he was during 2022, with his overtime rate only reflecting 1.5 times his hourly rate and not including applicable differentials or premiums.

23. Thus, Plaintiff Singles earned at least night shift differential and Sunday premium pay while working as an Air Traffic Controller during weeks he also earned overtime compensation. However, Defendant failed to include the night shift differential and Sunday premium pay, as well as any other differentials and premium pay he received, in the regular rate of pay upon which Plaintiff Singles' overtime rate is based during weeks

in which he also earned overtime compensation.

24. All Air Traffic Controllers employed by RVA who received such differentials and premium payments pursuant to the CBA for the relevant time period are similarly situated and routinely worked more than 40 hours in a workweek but were denied proper overtime compensation for hours worked in excess of 40 because Defendant fails to include these payments in the regular rate of pay upon which the Plaintiff's and those similarly situated Air Traffic Controllers' overtime rate is based. The precise amount of improperly paid overtime received by Plaintiff and those similarly situated can be identified through the Defendant's payroll and timekeeping records, and through other work and pay records.

## COUNT I

**FAILURE TO PROPERLY CALCULATE THE REGULAR RATE OF PAY FOR PLAINTIFF, AND THOSE SIMILARLY SITUATED, IN VIOLATION OF SECTION 7 OF THE FLSA**

25. Plaintiff hereby incorporates by reference Paragraphs 1 through 24 in their entirety.

26. Section 7(a) of the FLSA, 29 U.S.C. § 207(a), as well as the regulations of the U.S. Department of Labor, 29 C.F.R. Part 778, *et seq.*, require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions not applicable here. Defendant has failed to include certain payments, including but not limited to, night shift differential, Sunday premium pay, on-the-job training pay, and step-up pay, in Plaintiff's and those similarly situated regular rates of pay which is used to compute the overtime pay entitlements of Plaintiff and all others similarly situated.

This practice results in Defendant paying Plaintiff, and those similarly situated, for overtime work at a rate that is below the rate mandated by the FLSA. *E.g.*, 29 C.F.R. § 778.204; 29 C.F.R. § 778.203

27.     As a result of Defendant's systemic, continuing, willful, and purposeful violations of the FLSA, there has become due and owing to Plaintiff and all others similarly situated an amount that has not yet been determined. The employment and work records for Plaintiff and all others similarly situated reflecting such violations are in the exclusive possession, custody and control of Defendant, so Plaintiff is unable to state at this time the exact amount owing to him and to those similarly situated. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to the Plaintiff and all others similarly situated from which the amount of Defendant's liability can be ascertained.

28.     Pursuant to 29 U.S.C. § 216(b), Plaintiff and all others similarly situated are entitled to recover backpay as well as liquidated damages in an amount equal to their backpay damages for the Defendant's failure to pay proper overtime compensation.

29.     Plaintiff and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on his own behalf and on behalf of others similarly situated, pray that this Court:

(a) Order a complete and accurate accounting of all the compensation to which the Plaintiff is entitled;

(c) Award Plaintiff monetary damages, including liquidated damages equal to his improperly paid overtime compensation, plus interest;

(d) Award Plaintiff his reasonable attorneys' fees to be paid by the Defendant, and the costs and disbursements of this action; and

(e) Grant such other relief as may be just and proper.

Dated: January 15, 2026  Respectfully submitted,

/s/Matthew R. Dowdell
Matthew R. Dowdell, OBA # 20478
Mid-Continent Tower
401 South Boston Avenue
Suite 2500
Tulsa, OK 74103
Phone: (918) 200-9626
mdowdell@bondgill.com

/s/ Gregory K. McGillivary
Gregory K. McGillivary
(*Pro Hac Vice* Forthcoming)
Molly A. Elkin
(*Pro Hac Vice* Forthcoming)
Sarah M. Block
(*Pro Hac Vice* Forthcoming)
Rachel B. Lerner
(*Pro Hac Vice* Forthcoming)
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Avenue, N.W. Suite 1000
Washington, D.C. 20005
Phone: (202) 833-8855
Fax: (202) 452-1090
gkm@mselaborlaw.com
mae@mselaborlaw.com
smb@mselaborlaw.com
rbl@mselaborlaw.com

Counsel of Record for Plaintiff