**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JEFFREY SINGLES, ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Case No. CIV-26-61-R |
| ) | |
| ROBINSON AVIATION (RVA), ) | |
| INC., ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

Before the Court is Defendant Robinson Aviation (RVA), Inc.'s Motion to Compel

Arbitration [Doc. No. 33]. Plaintiffs filed a Response [Doc. No. 35] and Defendant replied

[Doc. Nos. 36, 37]. The matter is now at issue.

Defendant employs Plaintiff Jeffrey Singles as an Air Traffic Controller. Amended

Compl., Doc. No. 24, ¶ 3. Plaintiff brought this collective action claiming Defendant

violated Section 7(a) of the Fair Labor Standards Act, 29 U.S.C. § 207(a), and U.S.

Department of Labor regulations, 29 C.F.R. Part 778, *et seq.*, by paying Plaintiffs for

overtime work at a rate below that which the FLSA mandates. *Id.* ¶ 26. Defendant seeks to

compel arbitration of the dispute pursuant to the collective bargaining agreement executed

by Defendant and the National Air Traffic Controllers Association, which represents the

named and current opt-in Plaintiffs.

The Federal Arbitration Act governs arbitration agreements. 9 U.S.C. § 1, *et seq.*

The Act provides that "[a] written provision in . . . a contract evidencing a transaction

involving commerce to settle by arbitration a controversy thereafter arising out of such

1

contract or transaction . . . shall be valid, irrevocable, and enforceable," except for legal or equitable grounds "for the revocation of any contract." 9 U.S.C. § 2. Any party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition any federal district court for an order compelling arbitration in the manner provided for in the arbitration agreement. 9 U.S.C. § 4. The Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9. U.S.C. §§ 3, 4).

In the context of a collective bargaining agreement, however, the Supreme Court mandates that the waiver of statutory rights to a judicial forum be "clear and unmistakable." *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998).

The CBA in this case includes the following relevant provisions:

**Article 9, Section 1.** A grievance shall be defined as any complaint by a unit employee or the Union concerning any claimed violation of this Agreement or Employer personnel policies or regulations affecting conditions of employment.

**Article 9, Section 2.** This procedure provides the exclusive procedure available to the Parties and the employees in the unit for resolving grievances except as provided in Section 4 of this Article. Any employee(s) or the Union may file a grievance under this procedure. Bargaining unit employees and the Parties intend that the joint problem solving procedures of Article 8 shall be used to the fullest extent practicable to resolve problems before moving under this Article 9.

**Article 9, Section 5.** Employee and facility grievance procedure: . . .

**Article 9, Section 5, Step 4.** The Union at the national level may, within thirty (30) days following receipt of the Step 3 decision, notify the President

2

or designee, by certified mail, return receipt requested, that it desires the matter be submitted to arbitration. . . .

**Article 19, Section 10.** . . . FLSA non-exempt employees may also elect to have tuition reimbursements in excess of $250.00 distributed from any available Health and Welfare funds. . . .

[Collective Bargaining Agreement, Doc. No. 33-1, at pp. 10-12, 23].

Defendant also points to the following language in its Employee Handbook:[1]

Unless otherwise required by state or local statute, RVA pays overtime to all non-exempt employees who work more than forty (40) hours per work week in accordance with the Federal Labor Standards Act (FLSA).

The parties do not only disagree upon whether a clear and unmistakable waiver is present in the above language. They also interpret Article 9, Section 1 of the grievance procedure differently.

Defendant would have the Court interpret the language as such:

A grievance shall be defined as any complaint . . . concerning any claimed violation of (1) this Agreement or (2) Employer personnel policies or (3) regulations affecting conditions of employment.

Defendant argues the CBA clearly and unmistakably waives Plaintiffs' rights to bring their FLSA claims in a federal forum. In Defendant's view, the language indicates the parties intended the grievance procedure to apply beyond issues arising under the CBA terms. To support its argument, Defendant contends its "personnel policies" implicate the FLSA because the Employee Handbook requires Defendant to pay overtime in accordance

---

[1] Though Defendant refers to the Employee Handbook as "Exhibit 2" in its Motion, no such Exhibit was included. Exhibit 2 to the Motion to Compel Arbitration is a recognition letter [Doc. No. 33-2]. Plaintiffs do not dispute Defendant's representations regarding the Handbook's contents. In any event, the Court would not alter its decision whether or not it considers the Handbook.

3

with the FLSA. Defendant also points to the CBA's lone explicit reference to the FLSA, which states only that FLSA non-exempt employees may elect to have tuition reimbursements. Defendant further asserts the term "regulations affecting conditions of employment" is another manner of saying "statutes affecting conditions of employment," clearly incorporating/referencing the FLSA.

Plaintiffs argue the proper interpretation of the provision is as follows:

> A grievance shall be defined as any complaint . . . concerning any claimed violation of (1) this Agreement or (2) Employer personnel policies affecting conditions of employment or (3) Employer personnel regulations affecting conditions of employment.

Under Plaintiffs' interpretation, the provision cannot be read to implicate federal regulations, much less federal statutes like the FLSA, which is the actual authority pursuant to which Plaintiffs initiated this lawsuit.

Both parties ask the Court to adopt their chosen canon of construction (Defendant, the "rule of the last antecedent," Plaintiffs, the "series-qualifier") when interpreting the provision. But even if the Court agreed with Defendant's interpretation, after considering the "spectrum of cases ranging from those with clear and unmistakable waivers . . . to those without," the Court cannot find that the CBA includes a clear and unmistakable waiver of Plaintiffs' rights.[2] *Cloutier v. GoJet Airlines, LLC*, 996 F.3d 426, 439 (7th Cir. 2021).

---

[2] In any event, the Court is wary of finding a "clear and unmistakable" waiver in a CBA with multiple somewhat plausible interpretations. *See Sanchez v. Clipper Realty, Inc.*, 638 F. Supp. 3d 357, 368-69 (S.D.N.Y. 2022) (where a CBA could be construed in multiple ways, and court could not find any authority that defendants' proffered canon of construction "over[rode] the requirement that waivers of statutory claims must be clear and unmistakable," the CBA did not compel plaintiff to arbitrate his statutory claims); *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 85 (2d Cir. 2016) (where CBA could be

Two Supreme Court cases exemplify the opposite ends of the "clear and unmistakable waiver" spectrum. In *Wright*, the Supreme Court ruled that the plaintiff's claims under the Americans with Disabilities Act were not subject to the general arbitration clause contained in the CBA. *Wright*, 525 U.S. at 82. There, the CBA stated: (1) it was "intended to cover all matters affecting wages, hours, and other terms and conditions of employment," (2) anything not in the CBA was "not [to] be construed as being part of" the CBA, and (3) any disputes arising out of the terms or application of the CBA were to be arbitrated. *Id.* at 73 (quotations omitted). The CBA also stated none of its provisions "shall be violative of any Federal or State Law." *Id.* (quotation omitted). The Court concluded the general arbitration provision was not sufficiently specific to waive the plaintiff's statutory rights. "Not only is petitioner's statutory claim not subject to a presumption of arbitrability; we think any CBA requirement to arbitrate it must be particularly clear." *Id.* at 79. "[T]he right to a federal judicial forum is of sufficient importance to be protected against less than-explicit union waiver in a CBA." *Id.* at 80.

On the other end of the spectrum is *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009). In *Penn Plaza*, the Supreme Court considered whether a CBA requiring union members to arbitrate claims arising under the Age Discrimination in Employment Act of 1967 was enforceable. *Id.* at 251. The CBA contained an anti-discrimination provision that

---

interpreted to require arbitration of contractual disputes only, it did not effectuate a clear and unmistakable waiver). *See also Singletary v. Enersys, Inc.*, 57 F. App'x 161, 162 (4th Cir. 2003) (unpublished) (stating that when analyzing whether a union-negotiated waiver of statutory rights to a judicial forum is clear and unmistakable, the court does "not simply apply common law principles of contract interpretation; nor [ ] impose the general presumption of arbitrability that applies in other contexts").

incorporated federal and state law, by specific reference to the statutes, and provided that such claims be arbitrated. *Id.* at 252. The Supreme Court concluded the waiver of the judicial forum for the statutory anti-discrimination claims was clear and unmistakable. *Id.* at 274.

A variety of cases fall somewhere between *Wright* and *14 Penn Plaza*. Those wherein a clear and unmistakable waiver is found generally involve (1) a CBA with an arbitration provision that identifies by name the statutory claims subject to arbitration or (2) a CBA that identifies specific statutes it purports to incorporate. *See Styring v. City of Carlsbad*, No. 25-400 GJF/DLM, 2026 WL 905763, at *9 (D.N.M. Apr. 2, 2026) (citations omitted).

For example, in *Safrit v. Cone Mills Corp.*, 248 F.3d 306, 308 (4th Cir. 2001), the Fourth Circuit found a clear and unmistakable waiver where, in Section XX of the CBA, the "parties agreed that they would 'abide by all the requirements of Title VII' and that '[u]nresolved grievances arising under [] Section [XX] are the proper subjects for arbitration.'" Likewise, the Sixth Circuit found a clear and unmistakable waiver where the

> antidiscrimination provision explicitly require[d] "full compliance with all applicable Federal and State Statutes, regulations, rules and orders of appropriate Federal or State agencies having jurisdiction over the subject matter of discrimination in employment," but the grievance and binding arbitration provision also explicitly [referred] to "claims regarding equal employment opportunity . . . under any federal, state or local fair employment practices." Thus, the plain language of the contract indicate[d] the parties' mutual intent to require any "equal employment opportunity" statutory claims—which clearly encompass claims of racial discrimination in employment under § 1981, Title VII, and the Ohio Laws Against Discrimination—to be submitted to arbitration before suit may be brought in court.

*Nealy v. Shelly & Sands, Inc.*, 852 F. App'x 879, 883 (6th Cir. 2021) (unpublished). *See also Singletary*, 57 F. App'x at 164 (through "quite broad" arbitration provision referred "explicitly to '*any* and *all* claims . . . under *any* federal or state employment law,'" "its application to statutory claims arising in the employment context [was] certainly clear").

> In *Gilbert v. Donahoe*, 751 F.3d 303 (5th Cir. 2014), the court
>
> confronted a collective bargaining agreement with an arbitration provision that extended to disputes involving the "interpretation, application of, or compliance with the provisions of this Agreement." *Id.* at 309. In a different section, the agreement provided that "there shall be no unlawful discrimination against handicapped employees, as prohibited by the Rehabilitation Act." *Id.* at 309-10. The Fifth Circuit concluded that when combined, the arbitration clause and "this provision ma[de] it clear and unmistakable that the Rehabilitation Act is part of the [collective bargaining agreement] and subject to the same grievance procedures." *Id.* at 310. In other words, it "specifically provide[d] that it is incorporating into the agreement the prohibition of discrimination against handicapped employees contained in the Rehabilitation Act." *Id.*

*Cloutier*, 996 F.3d at 437-38 (discussing *Gilbert*, 751 F.3d at 309-10).

The *Nealy* Court observed that in cases where it had refused to compel the arbitration of statutory claims,

> [t]he holdings . . . hinged not on the presence or absence of citations to any particular statute, but on the lack of any language making it clear and unmistakable that the arbitration provision applied to the relevant statutory claims in the first place. In *Bratten v. SSI Servs., Inc.*, 185 F.3d 625 (6th Cir. 1999), for example, there was no explicit reference at all to statutory claims in the arbitration provision; rather, the operative language referred only to "[a]ny grievance arising under the terms of this contract" without any mention of statutory discrimination claims. *Id.* at 631-32. In that context, we noted the absence of any citation to an antidiscrimination statutory provision because that would be the only way to know that the employer was incorporating such a law into the agreement and thereby making a dispute under that law a "grievance arising under the terms of the contract." In contrast, the CBAs here specifically require statutory claims of equal employment opportunity to be arbitrated in the arbitration provision.

*Nealy*, 852 F. App'x 882-83 (citations modified).

Thus, explicit incorporation of statutes into the CBA or delineation of statutes subject to arbitration are both sufficient to clearly and unmistakably waive judicial forum rights. CBAs that fall short of the mark fail to adequately accomplish either of these methods. As found by the Seventh Circuit in *Cloutier*, 996 F.3d at 437 (citations modified):

> It is neither unattainable nor unreasonable to expect parties to a collective bargaining agreement to clearly state those statutory claims that they intend to confine to arbitration. . . . Not only did the language in *14 Penn Plaza* reference "claims made pursuant" to specific anti-discrimination laws, it also specifically subjected those claims "to the grievance and arbitration procedure . . . as the sole and exclusive remedy for violations." *See* 556 U.S. at 252. Without question, that collective bargaining agreement "explicitly stated" those claims had to be brought in arbitration. *See id.* at 258-59. The Collective Bargaining Agreement here, by contrast, made no mention of "claims made pursuant" to the FMLA nor suggested these (unmentioned) claims would be bound by arbitration provisions found nine sections later in Section 24. *See id.* The Collective Bargaining Agreement thus did not "explicitly state[ ]" that FMLA claims were limited to arbitration. *See id.*

And in *Vega v. New Forest Home Cemetery, LLC*, 856 F.3d 1130, 1131-32 (7th Cir. 2017), the court examined a CBA that defined "grievance" to include "'a claim or dispute concerning pay, hours[,] or working conditions or the interpretation or application of this Agreement.'" The court rejected the argument that "because the agreement define[d] a grievance to include disputes over pay, it necessarily require[d] statutory claims on the same subject to be submitted to the grievance process." *Id.* at 1134. It found there was no clear and unmistakable waiver where the CBA could be interpreted to mean a claim over the requirements of the contract, not FLSA. *Id.* at 1135. "Indeed, that is the most natural reading of the agreement, given that nowhere . . . in the agreement is there even a reference

8

to the FLSA." *Id.*; *see also Wright*, 525 U.S. at 80 (no clear and unmistakable waiver where CBA required arbitration of "matters under dispute," did not specify whether those matters could arise under contract, federal law, or both, and failed to incorporate specific statutes).

The Fifth Circuit examined a CBA with one provision mandating arbitration of controversies arising out of the CBA, and another provision forbidding the employer and union from discriminating against any individual "in violation of any federal or state law, or engag[ing] in any other discriminatory acts prohibited by law. This Article [] covers employees with a qualified disability under the [ADA]." *Ibarra v. United Parcel Serv.*, 695 F.3d 354, 356-57 (5th Cir. 2012). The Fifth Circuit rejected the argument that "by making the nondiscrimination rights guaranteed by the CBA coterminous with those under federal and state law, [the CBA] brings Title VII claims within the scope of the . . . disputes that must be resolved via the grievance procedures." *Id.* at 358. This "logical jump" was insufficient to amount to an explicit incorporation of statutory discrimination claims such that the plaintiff had waived her right to a judicial forum. *Id.* at 357-60.

And though, as discussed above, the Fifth Circuit in *Gilbert* found a clear and unmistakable waiver of claims pursuant to the Rehabilitation Act, it found differently for FMLA claims. The court addressed

> [the Employee and Labor Relations Manual, which was incorporated into the CBA,] requiring "policies to comply with the [FMLA]." *Id.* at 310 (alteration in original). Unlike the provision regarding the Rehabilitation Act, which had adequately incorporated that Act into the agreement, the generic mention of the FMLA did not suffice "to make the FMLA a part of the agreement." *Id.* The court went on to say that "[a]s our sister circuits have recognized, references to statutes that fall short of incorporation are insufficiently 'clear and unmistakable' to bar access to federal court." *Id.* (footnote omitted) (citing cases). Thus, with respect to the FMLA, the court held the agreement

9

"did not clearly and unmistakably require [the plaintiff] to resolve claims arising under the Family and Medical Leave Act through arbitration." *Id.* at 305.

*Cloutier*, 996 F.3d at 437-38 (discussing *Gilbert*, 751 F.3d at 305, 309-10) (citations modified).

In *Mathews v. Denv. Newspaper Agency LLP*, 649 F.3d 1199 (10th Cir. 2011), the CBA contained an anti-discrimination provision that covered national origin discrimination, although it did not specifically reference Title VII. The CBA's dispute resolution procedure called for arbitration in the "event of a disagreement as to the interpretation, application or construction of this contract, including all disputes involving discharge or discipline." *Id.* at 1202. The Tenth Circuit noted in part:

> By its own terms, the arbitration agreement applied only to disagreements "as to the interpretation, application or construction *of this contract* [i.e. the CBA], including all disputes involving discharge or discipline." CBA, Article XIII (emphasis added). Mathews's statutory claims consequently fall outside the scope of the arbitration agreement, and he has not waived such claims by failing to raise them at arbitration.

*Id.* at 1207.

An examination of these cases reveals "courts have concluded that for a waiver of an employee's right to a judicial forum for statutory discrimination claims to be clear and unmistakable, the CBA must, at the very least, identify the specific statutes the agreement purports to incorporate or include an arbitration clause that explicitly refers to statutory claims." *Ibarra*, 695 F.3d at 359-60 (citing *Carson v. Giant Food, Inc.*, 175 F.3d 325, 331-32 (4th Cir. 1999)).

10

Here, the language of the CBA's grievance procedure does not specifically reference the FLSA or statutory claims in general. The Court must ask, therefore, whether the CBA has adequately incorporated the FLSA such that there is a clear and unmistakable waiver of Plaintiffs' rights to litigate FLSA claims in a federal forum.

The CBA's only explicit reference to the FLSA is in Article 19, Section 10: "FLSA non-exempt employees may also elect to have tuition reimbursements in excess of $250.00 distributed from any available Health and Welfare funds. . . ." The Court can hardly characterize this as an express incorporation of the FLSA such that it constitutes a waiver of Plaintiffs' federal forum rights.

Nor is the Court convinced that the RVA Employee Handbook and broader language of the grievance provision amount to a clear and unmistakable waiver. In *Gilbert*, a case somewhat analogous to this one, the CBA's definition of "grievance" was not limited to disputes over the CBA's interpretation but also included disagreements "between the parties related to *wages, hours and conditions of employment*." *Gilbert*, 751 F.3d at 309 (emphasis added). But even though the CBA incorporated the Employee Manual, which provided policies to comply with FMLA, the *Gilbert* Court found the Manual did "not purport to make the FMLA a part of the" CBA because "references to statutes that fall short of incorporation are insufficiently 'clear and unmistakable' to bar access to federal court." *Id.* at 310.

Defendant points to the RVA Handbook provision stating non-exempt employees are paid overtime in accordance with FLSA, but has not argued that the Handbook has been incorporated into the CBA. Even if it has, the reference to the FLSA falls short of

11

incorporation. *Cf. Cloutier*, 996 F.3d at 437 (quoting *Wright*, 525 U.S. at 81) ("[T]hat GoJet had to comply with the law (or the FMLA) generally[ ] is 'not the same as making compliance with the [FMLA] a contractual commitment that would be subject to the arbitration clause'" in another section of the CBA.); *Mathews*, 649 F.3d at 1206 ("Although the parties acknowledged that violations of statutory law would *also* constitute violations of the contract, this does not mean that the CBA covered statutory claims or that the parties believed it to do so. . . . This reasoning does not change even though the contours of the CBA's anti-discrimination protections were defined by reference to federal law.").[3]

---

[3] That the grievance procedure, under Defendant's interpretation, purportedly encompasses "Employer personnel policies" and "regulations affecting conditions of employment" does not alter the Court's decision. Not only does the Court fail to find Defendant's interpretation particularly convincing, neither of these phrases support a "clear and unmistakable" waiver. As already discussed, the Court is unconvinced that the Employer personnel policies sufficiently incorporated FLSA such that Plaintiffs' rights were clearly and unmistakably waived.

Defendant's contention that "regulations" are typically understood to issue from a government entity rather than an employer is similarly unpersuasive. An examination of the CBA reveals that "Employer regulations" are very likely something contemplated by the parties: "Any provision of this agreement shall be determined a valid exception to, and shall supersede *any Employer rules, regulations, orders and practices* which conflict with this Agreement. . . . The Employer agrees to apply *its rules, regulations, and directives and orders* in a fair and equitable manner." CBA, Article 56, Section 1 (emphases added).

Moreover, Defendant's confidence that "regulations" and "statutes" may be used interchangeably is also unconvincing when the CBA, in numerous provisions, refers to them as separate things: "The Employer shall comply with all applicable Federal, State and Local laws, rules, and regulations relating to. . . ." *Id.* at Article 45, Section 3. "If any part of this agreement is . . . found to be in contravention of the laws or regulations of the United States. . . ." *Id.* at Article 57, Section 2. "An employee who is medically disqualified may appeal . . . in accordance with applicable laws, rules and regulations." *Id.* at Article 25, Section 7.

It comes down to this: neither (1) a "'clear and unmistakable provision under which the employees agree to submit to arbitration all federal causes of action arising out of their employment,'" nor (2) a "'general arbitration clause'" sufficiently "supported by additional provisions mandating 'explicit incorporation of [FLSA] requirements' which 'make[] it unmistakably clear that the [FLSA is] part of the agreement'" are present here. *Singletary*, 57 F. App'x at 163 (quoting *Carson*, 175 F.3d at 331-32). Without either, and considering the multiple plausible interpretations of the grievance procedure language, this Court "cannot now say the [CBA] 'indubitably provide[d ] a clear and unmistakable waiver.'" *Cloutier*, 996 F.3d at 439 (quoting *Safrit*, 248 F.3d at 308). This Court can "easily 'imagine a waiver that would be more definite or absolute.'" *Id.* (quoting *Safrit*, 248 F.3d at 308). Thus, without a clear and unmistakable waiver, Plaintiffs are not required to arbitrate their FLSA claims.

Accordingly, Defendant's Motion to Compel Arbitration [Doc. No. 33] is DENIED.

IT IS SO ORDERED this 12th day of May, 2026.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

13